IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ISIDORO QUINONEZ and
DIANE QUINONEZ                                                    PLAINTIFF/PETITIONER

V.                                    No.  2:08-CV-2086-RTD

LARRY NORRIS, Director
Arkansas Department of Correction                        DEFENDANT/RESPONDENT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the Petitioners' Motions to Vacate, Set Aside, or Correct a Sentence

Pursuant to 28 U.S.C., Section 2254 (Doc. 1 ) filed August 4, 2008.  The Defendant  filed a

Response (Doc. 11) on December 1, 2008.  The Petitioners have not filed a Reply and the matter

is ready for Report and Recommendation.

### I.  Background

On May 5, 2008, both petitioners entered pleas of guilty to possession of marijuana with

intent to deliver greater than 100 pounds and possession of drug paraphernalia in the Circuit

Court of Crawford County. On the conviction of possession of marijuana with intent to deliver,

Isidoro Quinonez received a sentence of twenty years in the Arkansas Department of Correction

(ADC) with an additional ten years suspended imposition of sentence. (Doc. 1, Exhibit 1) Diane

Quinonez received a sentence of fifteen years in the ADC with an addition fifteen years

suspended imposition of sentence on the possession with intent to deliver conviction. (Doc. 12,

Exhibit 2) Both petitioners received a ten year suspended imposition of sentence on the

possession of drug paraphernalia conviction.

Neither petitioner filed a Rule 37 complaint against their attorney. Diane Quinonez

claimed that she did not know what a Rule 37 was (Doc. 5, page 3) and Isidoro stated that he had

not filed one. (Doc. 6, page 3)

The Petitioners filed the current Motions to Vacate, Set Aside, or Correct a Sentence

Pursuant to 28 U.S.C. Section 2254 (Doc. 1 ) on August 4, 2008 alleging Ineffective Assistance

of Counsel, Errors in the Police Report, that the Traffic Stop was Illegal and that there was

discrimination because they were Hispanic.

## II.  Discussion

An application for a writ of habeas corpus on behalf of a person in custody pursuant to

the judgment of a State court shall not be granted unless it appears that the applicant has

exhausted the remedies available in the courts of the State. 28 U.S.C. section 2254(b)

 Because the exhaustion doctrine is designed to give the state courts a full and fair

opportunity to resolve federal constitutional claims before those claims are presented to the

federal courts, we conclude that state prisoners must give the state courts one full opportunity to

resolve any constitutional issues by invoking one complete round of the State's established

appellate review process.  *O'Sullivan v. Boerckel*  526 U.S. 838, *844-845, 119 S.Ct.

1728,**1732 - 1733 (U.S.Ill.,1999)

In this case the Petitioners' entered pleas of guilty on May 5, 2008 and judgements were

entered on May 20, 2008. (Doc. 11-1 and Doc. 12-1)  After entering their guilty pleas, Petitioners

could not appeal their convictions. *Seibs v. State*, 357 Ark. 331, 333, 166 S.W.3d 16, 17 (2004);

Ark. R. Cr. P. 24.3; Ark. R. App.P.-Criminal, Rule 1.  The Petitioners had 90 days from May 20,

2008 to bring their claim under Rule 37. See Ark. R. Crim. P. 37.2 (c)

The Petitioners have now filed this Habeas claim contending that their retained attorney

was constitutionally ineffective.

**Ineffective Assistance of Counsel**:

The claim is procedurally barred from review under *Wainwright v. Sykes,* 433 U.S. 72

(1977) and *Coleman v. Thompson,* 501 U.S. 722 (1991) because petitioners failed to raise this

claim in a state post-conviction proceeding and thereby give the state courts the first opportunity

to address it. "Unless a habeas petitioner shows **cause and prejudice** a court may not reach the

merits of ... procedurally defaulted claims in which the petitioner failed to follow applicable state

procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, (1992)

"The rule applies with equal force whether the state-law ground is substantive or

procedural." *Id*.  However, even if a state procedural rule is generally sound, it will not be

adequate to bar federal review, unless the rule is "strictly or regularly followed." *Barr v. City of*

*Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964). Further, a state procedural

bar is adequate only if state courts have applied the rule evenhandedly to all similar claims. See

*Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982).  The Rule 37

time requirements have been applied stickily, regularly and evenhandedly to all similar claims.

To establish cause, a petitioner must show that some objective factor external to the

defense prevented him from presenting or developing the factual or legal basis of his

constitutional claim. *Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91

L.Ed.2d 397 (1986). Interference by the state, ineffective assistance of counsel, and conflicts of

interest are examples of factors external to the defense which prevent a petitioner from

developing the factual basis of his claim. See *Amadeo v. Zant*, 486 U.S. 214, 222, 108 S.Ct.

1771, 1776, 100 L.Ed.2d 249 (1988) (interference); *Coleman v. Thompson*, 501 U.S. 722, 754,

111 S.Ct. 2546, 2567, 115 L.Ed.2d 640 (1991) (ineffective assistance); *Jennings v. Purkett*, 7 F.3d 779, 782 (8th Cir.1993) (conflict of interest).

However the exhaustion doctrine, which is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Murray v. Carrier*, Id at 489. This is particularly true when the ineffective assistance claim arises out of a plea as opposed to a trial.

Diane Quinonez  claimed that she did not know what a Rule 37 was (Doc. 5, page 3) and Isidoro stated that he had not filed one. (Doc. 6, page 3) No cause for the default has been shown by either of the petitioners except lack of knowledge and their own ignorance of the law which is no basis for granting relief. See *Jackson v. Ault*, 452 F.3d 734, 736-37 (8th Cir.2006) (attempt to obtain post conviction counsel)*;  Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir.2005) (failure to understand the plain language of a dismissal notice); *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir.2004) (prisoner's misunderstanding of proper procedure to file state petition); *Cross-Bey v. Gammon*, 322 F.3d 1012, 1016 (8th Cir.2003) (petitioner's lack of understanding of the law, and of the effect of his voluntary dismissal); *Baker v. Norris*, 321 F.3d 769 at 771-72 (limited access to law library and advance sign-up; ignorance of AEDPA's enactment); *Jihad v Hvass*, 267 F.3d 803 at 806-07 (unsuccessful search for counsel, and lack of access to trial transcript); Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir.2001) (delays in obtaining trial transcript). *Riddle v. Kemna* 523 F.3d 850, 858 (C.A.8 (Mo.),2008)

An examination of the prejudice prong is not warranted because Petitioners have failed to establish cause for their procedural default. *McCleskey v. Zant*, 499 U.S. 502 (1991)

**Errors in the Police Report, the Traffic Stop was Illegal, and Discrimination:**

In the petition the Petitioners' contend that the police report was incomplete and a vague complaint about the traffic stop. (Doc. 1) In the Questionnaire completed by Diane Quinonez stated that she believed that the tape of the traffic stop had been edited (Doc. 5, page 5) and that the tape should be reviewed "due to the fact that there was not any reason for us to be stopped". (Doc. 5, page 6) ISIDORO Quinonez stated in his Questionnaire that "when I was arrested, the amount of marijuana found was sixteen bundles, and in the evidence report only twelve were reported". (Doc. 6, page 5) ISIDORO Quinonez also stated that his attorney informed him that he could not see any reason on the tape why the police pulled him over. (Doc. 6, page 6)

There is actually no factual allegation that supports the claim that the petitioners were discriminated against. The only allegation made by ISIDORO Quinonez was that he was Hispanic (Doc. 1, page 10) and that his attorney told him he would lose at trial because this was a "white county". (Doc. 6, page 7)

Arkansas, of course, provides a process by which the petitioners could have raised their current Fourth Amendment challenges. Petitioners could have filed a motion to suppress in the trial court. They also could have appealed any adverse decision on the motion to the Arkansas Court of Appeals. See, e.g., Ark. R. Crim. P. 24.3(b) (allowing for conditional plea of guilty pending review of Fourth Amendment claim).

Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal

habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. *Stone v. Powell*,  428 U.S. 465 at 481-82; *Willett v. Lockhart*  37 F.3d 1265, 1267 -1268 (C.A.8 (Ark.),1994)

A voluntary plea of guilty constitutes a waiver of all non-jurisdictional defects. *Fowler v. United States*, 391 F.2d 276 (5th Cir. 1968); *Busby v. Holman*, 356 F.2d 75 (5th Cir. 1966); *United States ex rel. Glenn v. McMann*, 349 F.2d 1018 (2nd Cir. 1965), cert. denied, 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966).

**Voluntary Plea:**

In order for a guilty plea to be valid it must be knowing, intelligent, and voluntary.  *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)  The Arkansas Rules of Criminal Procedure require that the "Court shall not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary".  Ark Rules Cr. Proc., Rule 24.5

The Petitioners contend that their pleas were not voluntary but they were induced by their attorney.  Isidoro Quinonez states that "my lawyer would not talk to me about how to defend my case...[he] was very intimidating about how I need to take "the deal"..[W]hen he came at me with the offer from the prosecutor, no time was given to think about my options". (Doc. 6, page 3-4) Diane Quinonez states that "we were only given a couple of minuted to sign our plea agreements or our time would double".  (Doc. 5, page 4)

The record at the plea hearing contradicts the claims of the petitioners.  The court, after explaining the petitioners' rights had the following exchanges with the petitioners:

The Court: I take it, that you've talked to you attorney about this?

That he's explained and gone over with you the – pros and cons as far as, er,

Page 6

entering a plea or going to trial?

The Court: Is that right, Mr. Quinonez?

Mr. Defendant Quinonez: Yes, sir.

The Court: And, er, Ms. Quinonez?

Ms. Defendant Quinonez: Yes, Sir.  (Doc. 14, Attachment 1, page 6-7)...

The Court: Is, er, has anyone made any promises to you in this case, Mr. Quinonez

Mr. Defendant Quinonez: No sir.

The Court: Ms. Quinonez?

Ms. Defendant Quinonez: No sir.  (Doc. 14, Attachment 1, page 7)..

The Court: Is anyone forcing you or making you do this against your will. Mr. Quinonez?

Mr. Defendant Quinonez: No, Sir.

The Court: Er, Diane Quinonez?

Ms. Defendant Quinonez: No Sir.  (Doc. 14, Attachment 1, page 8)

The Court: Are you truly doing this voluntarily?  Mr. Quinonez

Mr. Defendant Quinonez: Yes, Sir.

The Court: Ms. Quinonez?

Ms. Defendant Quinonez: Yes, Sir.  (Doc. 14, Attachment 1, page 9)

The court then spent some time discussing the plea forms that the petitioners had signed

and presented to the court and the following exchange took place:

The Court: I know that these are – these forms are in English, Mr. Quinonez, but has the
interpreter interpreted these for you or translated.

Ms. Interpreter Auteuil: Point of order, Your Honor.  The interpreter on record did not
interpret these forms to Mr. Quinonez.

Mr. Bush: Er. Your Honor, yesterday evening, I have a paid interpreter, who is employed
by myself wand we spent an hour and a half, and she interpreted for me.  And I
went over the form extensively with him.

The Court: The, er, your attorney has stated that yesterday, that he paid a translator or
interpreter– to come into this office and for approximately an hour and a half– the

Page 7

          interpreter went over these forms with you so that you would understand these

          forms.

Mr. Bush: Your Honor, I apologize.  It was at their hotel room.

The Court: or at the hotel room.  Is that true?

Mr. Defendant Quinonez: It's correct

The Court: And do you understand these forms?

Mr. Defendant Quinonez: Yes, Sir.

The Court: And is there anything you're asking this court today with an interpreter her

          today?  Are you asking for any further, er, er, looking at these forms or studying

          these forms?

Mr. Defendant Quinonez: No, Sir.  It's not necessary.

The Court: Then, er, you feel that you know and understand what you're doing here, today,

          Mr. Quinonez?

Mr. Defendant Quinonez: Yes, Sir.

The Court: Ms. Quinonez, you've been able to read these forms for yourself; have you

          not?

Ms. Defendant Quinonez: Yes, Sir.  (Doc. 12, Attachment 1, page 10-12)

The Court specifically found that the petitioners had entered their pleas "voluntarily,

intelligently, and knowingly (Doc. 11, Attachment 1, page 2; and Doc. 12, Attachment 1, page 2)

and the plea proceedings substantiate the Circuit Judge's finding.  There is nothing in the plea

proceedings that substantiate the petitioners' claim that their plea was not voluntarily made.  The

plea proceedings show that the attorney met with the petitioners the night before they appeared in

circuit court and went over the plea.  The petitioners both acknowledge at the plea hearing that

they understood and accepted the plea and that they were not being forced to enter their plea.

The Court finds that their pleas were entered voluntarily.

**Evidentiary Hearing:**

Federal law provides that if an applicant has "failed to develop the factual basis of a claim in State court proceedings," then the federal court shall not hold an evidentiary hearing unless the claim relies on (1) a new rule of constitutional law made retroactive to cases on collateral review, or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). An applicant has "failed to develop" a claim only where "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). *Gingras v. Weber*, 543 F.3d 1001, 1004 (C.A.8 (S.D.),2008)

The court finds that the record of the case does establish conclusively that the Petitioner is not entitled to an Evidentiary Hearing.

### III.  Conclusion

Based on the above, I recommend that the instant petitions be dismissed with prejudice for failure to exhaust adequate state court remedies.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 11th day of February 2009.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE